IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

WELSPUN PIPES, INC.;  SATISH PANGHAL;
BALA SATISH KUMAR PANGHAL;
HARSH SATISH PANGHAL;
and METALI SATISH PANGHAL                                        PLAINTIFFS

v.                                            No. 4:20-cv-1464-DPM

DEPARTMENT OF HOMELAND SECURITY,
An Agency of the United States Government,
ALEJANDRO MAYORKAS, Secretary, in his
Official Capacity;  US CITIZENSHIP AND
IMMIGRATION SERVICES, An Agency of
the United States Government, TRACY RENAUD,
Senior Official Performing the Duties of the
Director, in her Official Capacity;  GREGORY
A. RICHARDSON, Director of the US Citizenship
and Immigration Services, TEXAS SERVICE
CENTER, in his Official Capacity;  and SUSAN
DIBBINS, Acting Chief of Administrative Appeals
Office, in her Official Capacity                                   DEFENDANTS

ORDER

1. Welspun manufactures oil and gas pipes at a facility in Little
Rock.  Satish Panghal, a citizen of India, worked for Welspun's parent
company there from 2005 to 2015.   He rose through the ranks,
culminating in a year-plus stint as senior manager of welding
operations.  In 2015, he transferred to Welspun's Little Rock facility for
a promotion to welding manager.  Mr. Panghal was granted L-1A

immigration status. His wife, Bala Satish Kumar Panghal, and their children, Harsh Satish Panghal and Metali Satish Panghal, received L-2 derivative status. The family's initial visas ran for three years. In January 2018, the Panghals' visas were extended an additional two years. In October 2018, the Panghals filed a permanent residency petition for Mr. Panghal in the EB-1C category of multinational executive or manager. It was approved on 11 November 2018. In December 2019, the Panghal family filed for second extensions of their respective visas. But this time, the government denied the parents' extension requests. The denial of Mr. Panghal's petition was upheld on administrative appeal. As a result, the family was left without legal status. According to counsel, the Panghals returned to India in March 2021.

**2.** Welspun and the Panghal family say that the visa denials violated the Administrative Procedure Act. They sought a TRO and a preliminary injunction. The Court denied the TRO request because the government defendants had notice and the Court wanted to hear from both sides. *Doc. 11.* Separately, due to the nature of the case, the Court noted that its decision would serve as a final decision about the merits and injunctive relief. *Doc. 16.* Because Plaintiffs' case presses a question of law entirely answerable by the administrative record and legal authorities, the Court treats their motion as one seeking a permanent

injunction.  After some additional briefing, *Doc. 17 & 18*, the injunction request is now ripe.  No hearing is needed.

**3.** To get a permanent injunction, Welspun and the Panghals must succeed on the merits.  *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020).  If they do, the Court will then consider whether, on the whole, the threat of irreparable injury, the inadequacy of legal remedies, the balance of the equities, and the public interest weigh in favor of issuing the injunction.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).

The government denied Mr. Panghal's extension request because it determined that Plaintiffs did not demonstrate his prior employment abroad in a capacity that was managerial, executive, or involved specialized knowledge.  8 U.S.C. § 1101(a)(15)(L).  The conclusions about Mr. Panghal's employment abroad in a managerial capacity are the core of the case.  8 U.S.C. § 1101(a)(44)(A);  8 C.F.R. § 214.2(l)(1)(ii)(B).

After scrutinizing Mr. Panghal's petition and attachments, *Doc. 14-2 at 81–411*, the Texas Service Center issued a Request for Evidence seeking additional documents about his work abroad.  *Doc. 14-1 at 47–52*.  It asked for evidence showing his performance of claimed managerial duties, detailed descriptions of his subordinates' duties that relieved him from performing non-managerial functions, and his authority to hire and fire or make recommendations on hiring and

-3-

firing.  And the Center gave examples of qualifying evidence, such as a letter from a corporate representative describing Mr. Panghal's position, a list of all employees in his division and under his direction, or performance appraisals showing his evaluation of subordinate employees.   In response, Mr. Panghal submitted the following documents:

- Support letter from his Indian employer detailing his job duties;
- Corporate organizational chart;
- Detailed job description outlining his responsibilities;
- Personnel list of all welding department workers;  and
- Copies of his pay stubs.

The Center was unpersuaded.  It stated that the support letter — a copy of the original support letter from his 2015 petition for L-1A status — and job description were misaligned in laying out his duties. The job description lacked a percentage-based breakdown of Mr. Panghal's work or proof of duties such as interviewing and hiring applicants and rewarding or disciplining employees.  The Center also said that Mr. Panghal hadn't provided sufficient supporting documents demonstrating that he performed his claimed managerial duties. Finally, it said that he didn't submit detailed duty descriptions for any of his subordinates or establish his authority to hire and fire (or recommend hiring and firing) and carry out other personnel actions.

-4-

Because of these identified deficiencies, the Center denied Mr. Panghal's petition. *Doc. 14-1 at 22–28.*

Mr. Panghal appealed. He did not submit additional information with his request for further review. Considering the matter *de novo* on the whole record, the Administrative Appeals Office upheld the visa denial. *Doc. 14-1 at 1–8.* It also focused on the most recent job description. The Office said the description did not indicate that Mr. Panghal interviewed applicants, hired employees (or had the authority to hire and fire), rewarded and disciplined workers, or addressed complaints and resolved issues. By contrast, the support letter said that Mr. Panghal carried out all those duties. The support letter also had a percentage-based breakdown of his time, but the job description didn't. Citing *Matter of Ho*, 19 I & N Dec. 582, 591 (BIA 1988), the Office concluded that Mr. Panghal hadn't resolved the discrepancies between the job description and the support letter. The discrepancies sowed doubt in the Office's mind about whether Mr. Panghal had actually performed the claimed managerial duties abroad. It counted a few more shortcomings in the petition, too. The fact that Mr. Panghal functioned at a senior level within the parent company's hierarchy was immaterial. Given the structure of the company, Mr. Panghal had to show the personnel-related authority demanded by 8 U.S.C. § 1101(a)(44)(A)(iii). The job description didn't indicate how much time Mr. Panghal spent on each of his duties in India, so the Office couldn't

determine if he "primarily" engaged in managerial work. In the Office's view, even the support letter's breakdown didn't demonstrate that he spent a majority of his time supervising and controlling the work of others. Plus, the record lacked sufficient detail about the duties of Mr. Panghal's subordinates. The evidence also didn't show what his subordinates did that freed him from operational tasks and allowed him to focus on managerial duties. All told, the Office concluded that Mr. Panghal hadn't demonstrated his employment abroad in a managerial capacity.

Was this conclusion arbitrary and capricious? 5 U.S.C. § 706(2)(A). Welspun and the Panghals say yes. They argue that the government ignored evidence supporting Mr. Panghal's petition and failed to weigh the evidence properly under the governing preponderance standard, 8 U.S.C. § 1361. *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010); *Barchart.com v. Koumans*, 2020 WL 820878, at *3 (D.D.C. 19 February 2020). The question isn't whether the Court would've arrived at the same answer on the evidence before the administrative agency, but rather whether the government's decision that Mr. Panghal hadn't shown that he primarily performed managerial responsibilities abroad was reasonable. *Department of Commerce v. New York*, 139 S. Ct. 2551, 2569 (2019). The Court concludes that it was.

Mr. Panghal had to establish that he met 8 U.S.C. § 1101(a)(44)(A)'s four criteria for managerial capacity abroad. That

- 6 -

capacity requires, among other things, "the authority to hire and fire or recommend those as well as other personnel actions (such as promotion or leave authorization)[.]"  8 U.S.C. § 1101(a)(44)(A)(iii).  The company support letter demonstrates that authority.  But, as best the Court can tell, no other evidence provided to the Center or the Office shows Mr. Panghal's authority on personnel matters while in his position in India. The Center and the Office found discrepancies between the support letter and other evidence, concluded that Mr. Panghal hadn't resolved this tension, and doubted the letter's truthfulness.  In the government's view, Mr. Panghal therefore lacked sufficient proof of his personnel-related authority in India.

Welspun and the Panghals challenge that view, arguing that the support letter and the job description must be read as complementary, and it was thus unreasonable to view them as contradictory pieces of evidence.  But, the letter and job description support both readings:  the letter could be understood as an amplification of the description;  or it could be seen as information at odds with the description.  The Court therefore can't say the government's conclusion was "a clear error of judgment."  *Minnesota Milk Producers Association v. Glickman*, 153 F.3d 632, 643 (8th Cir. 1998).  Despite Mr. Panghal's satisfaction of other criteria for managerial capacity, and despite Plaintiffs' other arguments, the government had reasonable grounds to deny his petition under 8 U.S.C. § 1101(a)(44)(A)(iii).

What of the point that the Panghals' visas and extensions were previously approved on basically the same evidence?  That undisputed fact doesn't change the outcome here.  The government's guidance on how to weigh prior extension approvals has waxed and waned.  During the relevant period, the Department of Homeland Security did not give any deference to prior determinations of nonimmigrant status. Rescission of Guidance Regarding Deference to Prior Determinations of Eligibility, PM-602-0151, issued 23 October 2017.  The policy changed in 2021, and deference is once again the prevailing practice.  But this policy reversal wasn't retroactive.  The Court must review the agency's action under the standards applicable at the time.  Those standards dictated that the government treat Mr. Panghal's extension request essentially the same as an initial petition.  And with fresh eyes, it denied the request.

A previous pattern of visa grants can, at times, obligate the government to provide a reasoned explanation for treating similar situations differently.  *Fogo De Chao (Holdings) Inc. v. U.S. Department of Homeland Security*, 769 F.3d 1127, 1144 (D.C. Cir. 2014).  This record, however, features a key difference:  additional documents, in response to the Request for Evidence, that muddied some of the existing materials.  The government has wide latitude to issue Requests for Evidence, 8 C.F.R. § 103.2(b)(8), and it found it necessary to issue one

here. It's regrettable that the Panghals' response created doubt rather than clarity, but that's not cause for setting the agency's decision aside.

Because the Court has concluded that Welspun and the Panghals have not succeeded on the merits, it need not analyze the remaining injunction factors.

* * *

Motion, *Doc. 9*, denied. Because the Court has construed the motion as one for a permanent injunction, this Order serves as a final adjudication on the merits. The Court will enter Judgment accordingly.

So Ordered.

D.P. Marshall Jr.
United States District Judge

11 June 2021